# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3122

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Galen G. Robertson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 13, 2003

Filed: April 9, 2003

_____

Before WOLLMAN, HEANEY, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Galen Robertson appeals his conviction for lying to a federal officer in violation of 18 U.S.C. § 1001 and the ten-month sentence imposed thereon. He argues that the evidence was insufficient to support the conviction and that the district court erred in applying a three-level upward departure during sentencing. We affirm the conviction, vacate the sentence, and remand for resentencing.

I.

In the early morning hours of March 23, 2001, Robertson went to a party at the home of Clark Cavanaugh in St. Michael, North Dakota, on the Spirit Lake Indian Reservation. Robertson argued with Cavanaugh, whereupon Cavanaugh, who is wheelchair-bound, ordered him to leave. Robertson left the Cavanaugh home, retrieved a handgun from his vehicle, fired approximately four to six shots outside the home, reentered the home, and pointed the gun at Cavanaugh's face. Robertson left with the gun before the police arrived. Before returning home, Robertson gave the gun to a friend to keep for him. Robertson was arrested at his residence a short time later. Bureau of Indian Affairs Special Agent Bentley Grey Bear interviewed Robertson at the Fort Totten jail that evening. Robertson admitted pointing a gun at Cavanaugh, but claimed that it was a $CO_2$-powered BB gun and that he was just playing a joke on Cavanaugh. Robertson also stated that Cavanaugh had grabbed the BB gun from his hand and stomped on it, breaking it. According to Robertson, he (Robertson) then picked up the pieces and threw them into the garbage inside Cavanaugh's house. Federal Bureau of Investigations Special Agent Mike Wilson and Special Agent Grey Bear found no evidence at the Cavanaugh residence that supported Robertson's statements. At Robertson's residence, Robertson's girlfriend gave Wilson and Grey Bear a BB gun that she said belonged to Robertson.

II.

> In reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and take as established all reasonable inferences tending to support the verdict. Reversal is appropriate only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.

United States v. Sherman, 262 F.3d 784, 790 (8th Cir. 2001) (citations omitted). Section 1001 of Title 18 prohibits "in any matter within the jurisdiction of any

department or agency of the United States . . . mak[ing] any false, fictitious or fraudulent statements or representations." To sustain a conviction under this section, the government must prove that any false statements made by the defendant were material to the governmental inquiry. United States v. Gaudin, 515 U.S. 506, 509 (1995). "[I]n general, a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decision making body to which it was addressed." Preston v. United States, 312 F.3d 959, 961 n.3 (2002) (per curiam) (internal quotation marks omitted) (quoting Neder v. United States, 527 U.S. 1, 16 (1999)).

Robertson contends that the government presented no evidence that any false statements he made were material. Robertson told Special Agent Grey Bear three falsehoods: (1) that he had used a BB gun, not a .22 caliber handgun; (2) that he was only joking; and (3) that the gun had been smashed and thrown into the trash. Robertson argues that his confession that he had pointed a BB gun at Cavanaugh was sufficient to support an assault charge, thus any false statements he told along the way were immaterial. We disagree. Robertson's false statements about the type of weapon used and what became of it were material to Special Agent Grey Bear's investigation. It is elementary that when police officers investigate a crime, they will seek out physical evidence, such as the weapon that was used. Materiality does not require proof that the government actually relied on the statement. See United States v. Hicks, 619 F.2d 752, 754-55 (8th Cir. 1980). A jury could reasonably conclude that Robertson's false statements had a natural tendency to influence the course of the investigation and thus were material to the investigation.

Robertson also contends that the district court erred in its decision to depart upward from the sentencing guidelines pursuant to U.S.S.G. § 5K2.9. We review a decision to depart from the guidelines for abuse of discretion, giving due deference to the district courts' institutional advantage in these matters. Koon v. United States, 518 U.S. 81, 98-99 (1996). However, "an abuse-of-discretion standard does not mean

a mistake of law is beyond appellate correction." Id. at 100. The sentencing court may depart from the prescribed sentencing range only if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). Each guideline is considered to carve out a "heartland" of typical cases; consequently, if the defendant's conduct "significantly differs from the norm" the sentencing court should consider whether a departure is warranted. United States v. Reinke, 283 F.3d 918, 923 (8th Cir. 2002) (quoting U.S.S.G. ch. 1, pt. A, introductory cmt. 4(b)); United States v. Culver, 929 F.2d 389, 392 (8th Cir. 1991) (affirming upward departure for conspiracy to transport stolen aircraft where crime was committed to facilitate drug trafficking). In making this determination, the sentencing court should ask:

1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case?
2) Has the Commission forbidden departures based on those features?
3) If not, has the Commission encouraged departures based on those features?
4) If not, has the Commission discouraged departures based on those features?

Reinke, 283 F.3d at 923 (quoting Koon, 518 U.S. at 95).

The sentencing guideline applicable to a violation of 18 U.S.C. § 1001 prescribes a base offense level of six.[1] U.S.S.G. app. A. The presentence report suggested a two-level enhancement for obstruction of justice, citing Robertson's statement that he used a BB gun and the witness statements and shell casings found at the scene that indicated that he used a .22 caliber handgun. The district court

---

[1]The district court applied U.S.S.G. § 2F1.1 (2000), which has since been consolidated into § 2B1.1 (2002).

rejected the U.S.S.G. § 3C1.1 obstruction-of-justice enhancement, reasoning that it would constitute improper double counting of an element in the underlying offense. Combined with Robertson's criminal history category of I, the applicable guideline range was zero to six months' imprisonment. After application of the § 5K2.9 upward departure, the guideline range was four to ten months' imprisonment.

The district court cited several factors in determining that an upward departure was warranted: (1) the underlying conduct involved a gun; (2) the gun was fired outside Cavanaugh's home; (3) the victim of the underlying assault was confined to a wheelchair; (4) Robertson tried to hide his involvement by giving the gun to his friend; and (5) the false statement was meant to conceal or mitigate his underlying criminal conduct. These factors do not remove the offense of conviction from the heartland of § 1001 offenses. They either are unrelated to the offense or have been taken into account by the guideline range established for a violation of § 1001. Robertson was convicted of lying to a federal agent. It would not seem to be unusual for § 1001 violations to involve suspects or witnesses who lie to federal agents to conceal their own or their associates' wrongdoing. See, e.g., Brogan v. United States, 522 U.S. 398, 399 (1998); United States v. Baker, 200 F.3d 558, 561 (8th Cir. 2000). On this point, we respectfully disagree with United States v. LeMaster, 54 F.3d 1224, 1232 (6th Cir. 1995) (rejecting the defendant's contention that the guidelines applicable to violations of § 1001 already take into account circumstances involving lies told to conceal other crimes). The only case cited in LeMaster for the proposition that § 1001 violations are commonly "motivated by purposes other than the concealment of other crimes" involved a defendant who falsely told the FBI that his wife was conspiring to assassinate the president so that the FBI would locate her for him. Id. (citing United States v. Rodgers, 466 U.S. 475 (1984)). Although the Sentencing Commission could not consider and account for every variation on false statements to federal agents, the possibility that a suspect would lie to an interrogator in order to minimize his exposure to criminal prosecution most certainly would have been within its consideration. We do not believe that a case in which the defendant

knowingly lies to a federal agent regarding a fact material to the agent's investigation falls outside the heartland of such offenses merely because the defendant told the lie to conceal aspects of the offense for which he was arrested. See United States v. Evans, 148 F.3d 477, 485 (5th Cir. 1998) (affirming § 5K2.9 upward departure from extortion sentence but noting "the sheer scale of the violations" set the offense apart from the incidental violations taken into account by the Sentencing Commission).

We affirm the judgment of conviction, vacate the sentence, and remand to the district court for resentencing.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.