# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2847

_____

United States of America,          *
                                       *

          Appellee,         *

                                       *   Appeal from the United States

         v.                    *   District Court for the

                                       *   Northern District of Iowa.

Roberto Sanchez-Florez, also known   *
as Tito, also known as David Silva,    *
also known as Guillermo Carmona     *
Gamboa,                               *

                                       *

          Appellant.       *

_____

Submitted: March 11, 2008
Filed: July 18, 2008

_____

Before RILEY, GRUENDER, and SHEPHERD, Circuit Judges.

_____

RILEY, Circuit Judge.

Roberto Sanchez-Florez (Sanchez-Florez) appeals the district court's[1] denial of his motion for a new trial. We affirm.

_____

[1]The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

## I. BACKGROUND

Neither party challenges the background facts leading to Sanchez-Florez's conviction by a jury for conspiracy to distribute 500 grams or more of a methamphetamine mixture. The only disputed issue is whether the district court erred in denying Sanchez-Florez's motion for a new trial because the government did not disclose improper fingerprint testing occurred, although Sanchez-Florez's fingerprints were never identified on any drug exhibits, causing Sanchez-Florez to lose the opportunity to challenge the government's overall credibility and infallibility. We briefly summarize the testimony given at Sanchez-Florez's trial which led to his conviction.

On January 23, 2004, Sanchez-Florez and three of his brothers, Juan Sanchez-Florez (Juan), Gilberto Sanchez-Florez (Gilberto), and Joel Sanchez-Florez (Joel) were charged with conspiracy to distribute methamphetamine. Sanchez-Florez and Joel proceeded to trial.

At trial, testimony indicated Sanchez-Florez and his brothers were transporting methamphetamine in vacuum sealed packages from San Jose, California, to Sioux City, Iowa. Some witnesses testified Sanchez-Florez and his brothers were involved in transporting large amounts of cash to San Jose, and other witnesses testified the brothers transported methamphetamine from San Jose to Sioux City for Sanchez-Florez and his brothers. One witness claimed he once sold two pounds of pure methamphetamine in California to Sanchez-Florez to be transported to Sioux City. Another witness said he purchased five pounds of methamphetamine on at least three separate occasions from Sanchez-Florez in Sioux City. This witness in turn resold the drugs in the area. Another witness explained that if his methamphetamine sources had no drugs to sell him, he knew Sanchez-Florez would provide the drugs. Testimony also indicated Sanchez-Florez and his brothers cut large amounts of methamphetamine (diluting the purity) for redistribution in Sioux City. Sanchez-Florez's live-in girlfriend acknowledged she knew Sanchez-Florez was a drug dealer, and she reported

on one occasion she saw approximately six pounds of methamphetamine in the basement of their house.

Salvador Sanchez-Florez (Salvador), another brother of Sanchez-Florez (who was charged in a separate case), testified he delivered drugs for Sanchez-Florez. Salvador stated he made numerous trips to California to obtain drugs for Sanchez-Florez and himself. Salvador admitted drugs and packaging materials recovered from his apartment belonged to him and his girlfriend. The methamphetamine and packaging material recovered from Salvador's residence were introduced at trial to illustrate the drug conspiracy operation of the Sanchez-Florez brothers.

The government also presented the testimony of a forensic chemist for the Drug Enforcement Administration (DEA), Odiest Washington (Washington). Washington testified to the chemical content and quantities of methamphetamine found in Salvador's apartment. On cross-examination, Washington testified he reviewed the case file and no fingerprints of Sanchez-Florez were found on the packaging of the methamphetamine. On May 20, 2005, a jury found Sanchez -Florez guilty.

On May 23, 2005, the Assistant United States Attorney became aware that DEA Senior Fingerprint Specialist Thomas Morris (Specialist Morris) had resigned from the DEA because he had not performed all the required fingerprint tests on certain exhibits, including the packaging of methamphetamine recovered from Salvador's apartment, and had falsified information on certain fingerprint examinations. The next day, the prosecuting attorney wrote a letter to Sanchez-Florez's counsel conveying the information concerning Specialist Morris. The government also returned the packaging materials to the DEA crime lab to be retested for fingerprints. The second testing of the packaging materials again showed no fingerprints of Sanchez-Florez.

On May 31, 2005, Sanchez-Florez filed a motion for a new trial. Sanchez-Florez claimed the information turned over to him after trial was exculpatory because

-3-

he could have attacked the validity of the evidence presented against him at trial. Before rendering a decision on Sanchez-Florez's motion for a new trial, the district court ordered the government to provide additional information concerning Specialist Morris's involvement in the fingerprint test of the packaging of the methamphetamine recovered from Salvador's apartment.

Based on the new information it received, the district court determined, among other things, that: (1) initially, in the case at hand, Specialist Morris took custody of evidence envelopes containing fingerprint evidence, and his report indicated no latent fingerprints of Sanchez-Florez existed on the evidence in question; (2) on July 13, 2004, the Northern District of Iowa United States Attorney's Office was notified of Specialist Morris's failure to test the evidence fully for fingerprints (almost one year before trial); (3) Specialist Morris resigned from the DEA on July 27, 2004, after he admitted to having falsified results on certain fingerprint examinations; (4) the DEA subsequently conducted a review of all the evidence that was in Specialist Morris's custody; (5) after the DEA concluded its investigation of Specialist Morris's cases, the DEA sent a letter, dated May 6, 2005, to each United States Attorney's Office that used Specialist Morris's services and informed them of the investigation into Specialist Morris's cases; (6) on May 10, 2005, the Cedar Rapids DEA Office received notification that Specialist Morris did not fully test for fingerprints and, a few days before trial, this information was e-mailed to the Sioux City United States Attorney's Office; and (7) seven days after trial, the results of a second fingerprint examination were provided, stating no latent fingerprints of value were found on the exhibits.

Based upon these determinations, the district court denied Sanchez-Florez's motion for a new trial. The district court determined Sanchez-Florez's trial was fair and the verdict was worthy of confidence. Sanchez-Florez appeals.

## II.    DISCUSSION

"In *Brady*, the Supreme Court held that due process requires the government to disclose to the defense all evidence favorable to the accused." United States v. Vieth, 397 F.3d 615, 619 (8th Cir. 2005) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)). "To find a *Brady* violation, evidence must be material and exculpatory and have been suppressed by the government." Id. (citation omitted). "Violations under *Brady* are cause for reversal if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. (citation and quotations omitted). "A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome of the trial." Id. (citation and quotations omitted). "The critical question [] is whether the defendant received a trial resulting in a verdict worthy of confidence." United States v. Almendares, 397 F.3d 653, 664 (8th Cir. 2005) (citing Kyles v. Whitley, 514 U.S. 419, 434 (1995)). "We review the district court's denial of a new trial motion based on a *Brady* claim for abuse of discretion." Id. (citation omitted).

We agree with the district court that the information regarding Specialist Morris's malpractice would not have changed the outcome of the trial. No one claimed the drugs found in Salvador's apartment belonged to Sanchez-Florez. Salvador claimed the drugs belonged to him and his girlfriend. The information regarding Specialist Morris was not exculpatory or otherwise favorable. "Evidence must be favorable to the accused to create a *Brady* violation." Vieth, 397 F.3d at 619 (citation omitted). The result of Specialist Morris's flawed fingerprint test showed there were no latent fingerprints on the drug packaging in question. A retest of the drug packaging by a different fingerprint specialist provided the same result, i.e., an absence of Sanchez-Florez's fingerprints. Knowledge before trial of Specialist Morris's mishandled fingerprint cases would not have changed the result of the proceedings. Evidence of Specialist Morris's mishandling of fingerprint cases is not a Brady violation.

Sanchez-Florez argues he could have attacked the credibility and infallibility of the government's expert testimony. It is difficult to imagine how Sanchez-Florez's defense would be bolstered by impeaching the expert further. We suspect the jury knew government employees are fallible. The evidence against Sanchez-Florez was overwhelming.

The evidence of Specialist Morris's malpractice is simply not exculpatory in this case and would not have produced a different verdict. As the district court noted:

> The jury found defendant guilty with no evidence of his fingerprints on the bags. Had Morris done his job correctly, defendant's fingerprints would still not have been found on the bags . . . [D]efendant's early awareness of the falsified fingerprint report would not have changed the outcome of the trial. . . .

The district court properly denied Sanchez-Florez's motion based on a <u>Brady</u> violation.[2] <u>Almendares</u>, 397 F.3d at 664 ("Evidence is material under *Brady* if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (citation and quotations omitted)).

"A defendant is entitled to a fair trial, not a perfect one." <u>United States v. Nichols</u>, 416 F.3d 811, 818 (8th Cir. 2005) (citation and quotation omitted). Sanchez-Florez received a fair trial and the resulting verdict is worthy of confidence. The

---

[2]Based on this conclusion, the district court also properly denied Sanchez-Florez's motion predicated upon newly discovered evidence (an issue not contested in Sanchez-Florez's appellate brief). <u>See</u> <u>United States v. Baker</u>, 479 F.3d 574, 577 (8th Cir. 2007) (reciting, "the newly discovered evidence must be [among other things] such that its emergence probably will result in an acquittal upon retrial. . . . [N]ewly discovered evidence must be more than merely . . . impeaching." (citations and quotations omitted)).

district court did not abuse its discretion in denying Sanchez-Florez's motion for a new trial.

## III. CONCLUSION

We affirm the judgment of the district court.

_____