# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3267

_____

United States of America

*Plaintiff - Appellee*

v.

Michael Todd Never Misses A Shot

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota

_____

Submitted: March 15, 2013
Filed: May 21, 2013

_____

Before WOLLMAN and COLLOTON, Circuit Judges, and HOLMES,[1] District Judge.

_____

HOLMES, District Judge.

Michael Todd Never Misses A Shot pleaded guilty pursuant to a written plea agreement to making false statements in violation of 18 U.S.C. § 1001(a)(2). At

_____

[1] The Honorable P.K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

sentencing, the district court[2] departed upward from the advisory guidelines range and sentenced Never Misses A Shot to 36 months' imprisonment. Never Misses A Shot appeals his sentence, arguing that the district court erred in departing upward from the guidelines range and also that the sentence imposed is substantively unreasonable. We affirm.

I.

Never Misses A Shot's conviction arose from statements he made to FBI agents regarding a federal investigation into the April 7, 2010 disappearance of A.J. Lufkins. On October 1, 2011, Never Misses A Shot called an FBI agent and stated that on April 8, 2010, two individuals came to his house and confessed to assaulting and killing Lufkins, then burning and disposing of the body. The story involved specific details about beating Lufkins and discarding his remains in the Missouri River. None of these statements were true, and Never Misses A Shot later admitted that he had lied to the FBI in an attempt to divert attention from another person the FBI had recently interviewed in connection with Lufkins' disappearance.

The United States Probation Office prepared a Presentence Investigation Report (PSR) that provided detailed information about Never Misses A Shot's criminal history, which included juvenile adjudications, adult criminal convictions, and other arrests. The probation officer calculated the criminal history category to be IV and the total offense level to be a four, resulting in a guidelines range of two to eight months' imprisonment. At sentencing, the district court found that a criminal history category of IV "seriously understates the likelihood that [Never Misses A Shot] will commit other crimes," and departed upward pursuant to USSG § 4A1.3(a)(1), increasing the criminal history category from IV to VI. The district

_____

[2] The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

-2-

court also found that "this [was] not the typical false statement situation," and "the Sentencing Commission could not have considered this type of conduct when setting up the sentencing range for making a false statement," and departed upward pursuant to USSG § 5K2.0, increasing the total offense level from four to twelve. Based on the upward departures, the district court found the resulting sentencing range to be thirty to thirty-seven months and imposed a sentence of thirty-six months' imprisonment.

## II.

We review a district court's imposition of a sentence, whether inside or outside the advisory guidelines range, under a deferential abuse-of-discretion standard. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). Never Misses A Shot argues that the district court's upward departures from the guidelines were unreasonable. He also argues that the district court abused its discretion by imposing a 36-month sentence.

Never Misses A Shot first challenges the district court's reliance, in part, on his prior arrest record in determining that an upward departure was warranted based on the inadequacy of a criminal history category of IV. Under USSG § 4A1.3(a)(1), an upward departure may be warranted if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." The court may consider prior sentences not used in computing the defendant's criminal history category as well as prior similar adult criminal conduct not resulting in a criminal conviction. USSG § 4A1.3(a)(2)(A), (E). Although the sentencing court cannot rely on a defendant's prior arrest record alone as the basis for an upward departure, the court may consider prior arrests so long as the PSR provides sufficient factual details underlying the arrests and the court does not rely solely on the arrests to justify the upward departure. *See United States v. Hacker*, 450 F.3d

-3-

808, 813 (8th Cir. 2006) (affirming upward departure based, in part, on consideration of arrest history where certain arrests were factually supported and the arrests were not the sole basis for departure).

The district court departed upward in this case because it determined that a criminal history category of IV "is inadequate and . . . significantly underrepresents the likelihood that he will commit other crimes, as well as his actual criminal history." The court concluded that it would depart upward by increasing the criminal history category by two levels, to category VI. In doing so, the court relied on the criminal history information provided in the PSR as the basis for the departure. At sentencing, the district court noted multiple prior adult convictions for which Never Misses A Shot received no criminal history points. Notably, two of these convictions were for impersonation to deceive a law enforcement officer, which is an offense involving a false statement. The court also briefly mentioned three prior arrests, two of which involved multiple charges. The PSR described the underlying factual basis for each arrest. Prior to sentencing, the district court notified the parties of its intent to depart upward due to the inadequacy of a criminal history category of IV. Even so, Never Misses A Shot did not object to any of the factual information regarding his criminal history in the PSR and did not present any evidence at the sentencing hearing. Unless a defendant specifically objects, a sentencing court may accept the factual statements contained in a PSR as true. *United States v. Young*, 272 F.3d 1052, 1055 (8th Cir. 2001).

We conclude that Never Misses A Shot's prior arrests are described with sufficient factual detail in the PSR to allow the court to consider the arrest record. In addition, the arrest record was not the sole basis for the upward departure. The district court also considered prior sentences that were not used to compute his criminal history category, prior similar adult criminal conduct, and his lengthy history of criminal behavior. The court found that this repeated pattern of criminal behavior demonstrated a propensity to recidivate. Based on this record, the district court did

not err in considering Never Misses A Shot's arrest record in the context of his broader criminal history as a partial basis for increasing his criminal history category by two levels.

Never Misses A Shot next contends that the district court erred in imposing an upward departure based on USSG § 5K2.0(a)(1)(A). Section 5K2.0(a)(1)(A) is a policy statement that provides for an upward departure if the court finds an aggravating or mitigating circumstance exists "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." *See also* 18 U.S.C. § 3553(b)(1) (explaining that the sentencing court may impose a non-guidelines sentence where "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines"). "Each guideline is considered to carve out a heartland of typical cases; consequently, if the defendant's conduct significantly differs from the norm the sentencing court should consider whether a departure is warranted." *United States v. Robertson*, 324 F.3d 1028, 1031 (8th Cir. 2003) (internal quotation omitted). In making that determination, the sentencing court should consider what features of the case potentially take it outside the guidelines' heartland and make it a special or unusual case; the court should also consider whether the Sentencing Commission has forbidden, encouraged, or discouraged departures based on any such features. *Id.*

The commentary to the guideline for § 1001 offenses, USSG § 2B1.1, acknowledges that an upward departure may be warranted in cases in which "the offense level determined under this guideline substantially understates the seriousness of the offense." U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.19(A) (2011). Therefore, the Sentencing Commission has explicitly encouraged departures based on the seriousness of the offense for offenses falling within the ambit of USSG §

2B1.1 specifically. Importantly, the commentary goes on to provide a non-exhaustive list of factors a court may consider in determining whether such a departure is warranted, including where "[a] primary objective of the offense was an aggravating, non-monetary objective" and where "[t]he offense caused or risked substantial non-monetary harm." U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.19(A)(i), (ii) (2011).

Never Misses A Shot relies on *United States v. Rodgers*, 466 U.S. 475 (1984), as support for the proposition that the Sentencing Commission could have considered the kind of false statement at issue in this case when determining the guidelines for § 1001 offenses. In *Rodgers*, the United States Supreme Court interpreted the language of 18 U.S.C. § 1001 and found that the statute encompasses criminal investigations conducted by the FBI, and therefore the defendant's conduct of falsely reporting to the FBI that his wife had been kidnapped could constitute an offense under § 1001. *Rodgers*, 466 U.S. at 477. However, Never Misses A Shot's reliance on *Rodgers* is misplaced for two reasons. First, the kind of false statement at issue in *Rodgers* is factually distinguishable from the kind of false statement at issue here. In *Rodgers*, the defendant reported a fake crime to induce the FBI to find his wife. Here, the defendant falsely accused two innocent individuals of assault and murder during the on-going investigation of a man's disappearance in an attempt to divert attention from someone the FBI had recently interviewed in the matter. Second, the fact that the general offense of falsely reporting a crime to the FBI falls within the conduct proscribed by § 1001 does not mean that all such offenses are within the "heartland" of typical cases. As we have noted in the past, "the Sentencing Commission could not consider and account for every variation on false statements to federal agents." *Robertson*, 324 F.3d at 1032 (holding that lying to a federal agent regarding a criminal investigation did not fall outside the heartland of § 1001 offenses "merely because the defendant told the lie to conceal aspects of the offense for which he was arrested"). The determination must be made on a case-by-case basis, and a departure may be warranted in circumstances where a defendant's conduct

significantly differs from the norm. *United States v. Richart*, 662 F.3d 1037, 1047–1048 (8th Cir. 2011) (distinguishing *Robertson* and affirming a § 5K2.9 upward departure in a § 1001 case where defendant lied to federal agents "to cover up a particularly brutal crime").

We agree with the district court that Never Misses A Shot's case differs significantly from the norm for false statement offenses because of the seriousness of the offense. The district court found that Never Misses A Shot's conduct—accusing two innocent persons of the assault and murder of a missing person, and reporting that they burned the body and disposed of it in a river—goes well beyond other offenses falling within § 1001, which includes offenses such as giving a law enforcement officer a false name, falsifying federal regulatory reports, or lying about marital status on a tax return. Never Misses A Shot's false statement involved an elaborate set of lies regarding an active FBI investigation. His lies accused two individuals of multiple brutal crimes, including murder. At sentencing, the district court rightly emphasized the seriousness of accusing an innocent person of a crime, particularly if the accusation is murder and there is a possibility of the death penalty.

According to Never Misses A Shot, his conduct was not as serious an offense as the district court considered it to be because the FBI never really believed him and the accused individuals were never in any real danger of being charged with a crime. He argues that the district court should have focused on the actual consequences of his offense behavior, which were minor because the FBI agents determined that his statements were false before any extensive investigation involving the accused parties occurred. However, the consequences of Never Misses A Shot's criminal behavior are, taken together, only one part of the offense conduct to consider. Never Misses A Shot's accusations risked substantial harm to both the FBI's investigation and to the accused individuals. The fact that the FBI agents involved prevented any substantial harm from happening does not diminish the gravity of Never Misses A

-7-

Shot's conduct. Had a substantial disruption of governmental activities occurred, resources been expended, or harm to the accused resulted, the district court could have considered a more extensive departure. The district court did not err as a matter of law in concluding that the facts warranted an upward departure under § 5K2.0. Therefore, we conclude that the district court did not abuse its discretion in departing upward.

## III.

Never Misses A Shot also challenges the substantive reasonableness of his sentence. In the absence of procedural error, we evaluate the substantive reasonableness of a sentence for abuse of discretion, considering the totality of the circumstances. *United States v. Mees*, 640 F.3d 849, 856 (8th Cir. 2011) (citing *Feemster*, 572 F.3d at 461). "For sentences within the guidelines range, we may, but are not required to, apply a presumption of reasonableness. However, we are not permitted to apply such a presumption where . . . the sentence is outside the guidelines range." *United States v. Grimes*, 702 F.3d 460, 471 (8th Cir. 2012) (internal citation omitted). Where the district court imposes a sentence outside the guidelines range, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall v. United States*, 552 U.S. 38, 51 (2007).

Here, the district court determined that the seriousness of the offense and Never Misses A Shot's extensive criminal history were not adequately taken into account by the guidelines range. The district court discussed its consideration of the § 3553(a) factors, noting that while the court is required to give the guidelines great weight, the court is also required to consider the objectives under § 3553(a)(2), including the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Upon review, we find no basis for concluding that the district court imposed a sentence that

was greater than necessary to meet the statutory purposes of sentencing or otherwise abused its discretion.  Therefore, we find that the sentence imposed was substantively reasonable.

The sentence is affirmed.

---