# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3503

_____

United States of America

*Plaintiff - Appellee*

v.

Randall Tremayn Robinson, also known as Dirty Rob

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 25, 2015
Filed: January 5, 2016

_____

Before WOLLMAN, COLLOTON, and KELLY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

In June 2012, Randall Tremayn Robinson, a former officer of the Little Rock, Arkansas, Police Department (LRPD), was charged in a multi-count indictment with distributing one-half pound of marijuana to a confidential informant (CI), conspiring and attempting to aid and abet possession with intent to distribute 1000 pounds of marijuana, possessing a firearm in furtherance of a drug-trafficking crime, and

misprision of felony.  The charges stemmed from allegations that Robinson, in his official capacity as a police officer, provided protection for shipments of marijuana being delivered to drug traffickers in Little Rock.  Robinson proceeded to trial on a superseding indictment, and in July 2013, a jury found him guilty of distributing one-half pound of marijuana to a CI but was unable to reach a verdict on the remaining counts.  The government then dismissed the firearm count, and the district court[1] declared a mistrial on the remaining counts.  In February 2014, Robinson was charged in a third superseding indictment with the counts on which a mistrial was declared and with new counts alleging that he had used a telephone to commit and facilitate a drug felony and that he had made material false statements to agents of the United States.  A jury found Robinson guilty of making material false statements, but acquitted him on the remaining counts.  The district court[2] sentenced Robinson to concurrent one-month terms of imprisonment on the two convictions.  Robinson appeals, and we affirm.

Robinson first argues that the government failed to disclose evidence favorable to his defense in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963), and that the district court abused its discretion by denying his motion for a new trial based on that violation, see United States v. Sanchez-Florez, 533 F.3d 938, 941 (8th Cir. 2008) (standard of review).  The alleged Brady violation was related to the testimony of then-LRPD Detective Charles Weaver at Robinson's first trial.  Weaver, who was employed by the LRPD but assigned to the FBI at the time of Robinson's trial, testified that on August 4, 2009, he met with a CI, arranged for the CI to conduct a controlled buy of marijuana from Robinson, provided the CI with $600 in LRPD buy money, took possession of the marijuana after the controlled buy was completed, and

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas, now retired.

[2]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

prepared the police report documenting the events. It was this transaction that formed the basis for Robinson's marijuana-distribution conviction.

In December 2013, after his first trial had ended in the marijuana-distribution conviction but before his second trial began, Robinson filed a motion for a new trial. Robinson had recently learned that in August 2013, the LRPD had initiated an investigation into discrepancies in LRPD property-room documentation filed by Weaver. The investigation resulted in allegations that Weaver had forged the signatures of two property owners on LRPD property-room receipts in February 2013, falsely indicating that he had returned roughly $9,000 in cash to its owners when, instead, he had presumably kept the cash for himself. Weaver lied to investigators when he was questioned about the incidents, initially asserting that he had returned the cash to its owners and later recanting that statement. Weaver was fired by the LRPD in September 2013, although the allegations against him had not been finally determined. As is apparent from the sequence of events, both the initial discovery of these discrepancies by the LRPD and the ensuing investigation occurred after Robinson's first trial.

Robinson argued in his new trial motion that the government had a duty under Brady to disclose this misconduct prior to Weaver's testimony at Robinson's trial—even if that misconduct was known only to Weaver himself at the time—because Weaver was a member of the prosecution team and, as such, his knowledge of his own wrongdoing was attributable to the government. See Kyles v. Whitley, 514 U.S. 419, 437-38 (1995). Robinson argued that Weaver's misconduct was material impeachment evidence that reasonably could have affected the outcome of his trial. After a hearing, the district court denied Robinson's motion, concluding that because Weaver alone had knowledge of his own misconduct and because that misconduct was completely unrelated to the case against Robinson, Weaver's knowledge would not be attributed to the prosecution. The court also noted that the government's case did not rest solely on Weaver's testimony, because LRPD

Detective Rick Kiser, who also testified at Robinson's trial, had personally observed Robinson hand the CI a plastic-wrapped package that was later proved to contain one-half pound of marijuana.

On appeal, Robinson reiterates his Brady-violation arguments, asserting that he is entitled to a new trial on the marijuana-distribution conviction because the government improperly suppressed material impeachment evidence regarding Weaver and that he is entitled to a new trial on the false-statement conviction because the marijuana-distribution conviction obtained in violation of Brady was introduced at his second trial to shore up the government's otherwise weak case.

Under Brady and its progeny, prosecutors have a duty to disclose to the defense all material evidence favorable to the accused, including impeachment and exculpatory evidence. See Kyles, 514 U.S. at 432-34; United States v. Bagley, 473 U.S. 667, 676 (1985). This duty extends not only to evidence of which a prosecutor is aware, but also to material "favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles, 514 U.S. at 437. Such evidence is "material" only if there is a "reasonable probability" that, had it been disclosed, "the result of the proceeding would have been different." Strickler v. Greene, 527 U.S. 263, 280 (1999) (quoting Bagley, 473 U.S. at 682). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id. at 289-90 (quoting Kyles, 514 U.S. at 434).

Because "[a] prosecutor has a duty to disclose evidence known by police officers, even if not known by the prosecutor," a prosecutor has an attendant duty to learn of such evidence. United States v. Tyndall, 521 F.3d 877, 882 (8th Cir. 2008). This attendant duty to learn of material and favorable exculpatory or impeachment evidence necessarily anticipates that a prosecutor will have an opportunity to discover

such evidence through the exercise of reasonable diligence. In a case such as this, however, when the evidence at issue is misconduct by a government witness, and that misconduct is unrelated to the investigation or prosecution of the defendant, is known only to the witness himself, and could not have been discovered by the prosecutor through the exercise of reasonable diligence, we are reluctant to conclude that such evidence should be imputed to the prosecutor. See United States v. Robinson, 627 F.3d 941, 952 (4th Cir. 2010) (noting that courts have refused to extend the Brady imputed-knowledge doctrine if it "would cut against the agency principles underlying imputed knowledge and would require prosecutors to do full interviews and background checks on everyone who touched the case"); see also United States v. Kern, 12 F.3d 122, 126 (8th Cir. 1993); cf. United States v. Lee Vang Lor, 706 F.3d 1252, 1259 (10th Cir.) (noting in suppression-hearing context that, regardless of Brady's application, "[w]e do not think prosecutors have a duty to investigate officers' actions in entirely unrelated cases just in case some impeaching evidence may show up"), cert. denied, 134 S. Ct. 679 (2013).

Whatever the reach of Brady's imputed-knowledge doctrine in other situations, Robinson has failed to show that the alleged Brady evidence was material. Undisclosed evidence, including impeachment evidence, is "material" for Brady purposes only if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles, 514 U.S. at 435. Here, Weaver was not the only officer to testify about the controlled drug buy that resulted in Robinson's marijuana-distribution conviction. As noted by the district court, Detective Kiser, who was assigned to conduct visual surveillance of the controlled buy, testified that he observed Robinson and the CI arrive at the location for the buy, that he identified Robinson when Robinson exited his vehicle at that location, that Robinson and the CI "made an exchange," and that he saw Robinson hand the CI a plastic-wrapped package that was later confirmed to contain marijuana. Even if evidence regarding Weaver's misconduct had been disclosed to Robinson and had been used to impeach Weaver's testimony, there is no reasonable probability that

Robinson would have been acquitted of the marijuana-distribution charge, given Kiser's eyewitness testimony. We are satisfied that Robinson received a fair trial that resulted in a verdict worthy of confidence. See Strickler, 527 U.S. at 289-90. The district court thus did not abuse its discretion in denying Robinson's motion for a new trial on the marijuana-distribution conviction.

Because the marijuana-distribution conviction was not obtained in violation of Brady, we reject Robinson's argument that the government's introduction of that conviction at his second trial entitles him to a new trial on the false-statement charge. Likewise, we reject Robinson's argument that the district court abused its discretion by admitting evidence of the marijuana-distribution conviction. See United States v. Horton, 756 F.3d 569, 579 (8th Cir.) (standard of review), cert. denied, 135 S. Ct. 122 (2014). Evidence is admissible under Federal Rule of Evidence 404(b) if it is "(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) proven by a preponderance of the evidence; and (4) if the potential prejudice does not substantially outweigh its probative value." United States v. Thomas, 398 F.3d 1058, 1062 (8th Cir. 2005). A prior conviction for distributing drugs is "relevant under Rule 404(b) to show knowledge and intent to commit a current charge of conspiracy to distribute drugs." Horton, 756 F.3d at 579. Moreover, "[p]rior felony drug convictions are relevant to show intent and knowledge in a drug prosecution when a defendant makes a general denial defense, which necessarily places the defendant's state of mind at issue." United States v. Banks, 706 F.3d 901, 907 (8th Cir. 2013) (quoting United States v. Hawkins, 548 F.3d 1143, 1147 (8th Cir. 2008)). The third superseding indictment charged Robinson with two drug-related counts, including conspiracy to aid and abet the distribution of marijuana. His earlier marijuana-distribution conviction was thus relevant and admissible to show knowledge and intent. In addition, Robinson's defense at his second trial was that he had no knowledge of the marijuana being transported in the vehicle he was following and that he did not know why he had been asked to follow that vehicle in his police cruiser. This general-denial defense placed Robinson's state of mind at issue, and

evidence of his earlier marijuana-distribution conviction was relevant to show knowledge.

Robinson cites United States v. Burkhead, 646 F.2d 1283 (8th Cir. 1981), in support of his argument that because the marijuana-distribution conviction resulting from his first trial was "a separate count on the same indictment" as the counts charged at his second trial, that conviction should not have been admitted. In Burkhead, a conspiracy count was severed from the indictment, and the defendant was thereafter convicted after a trial on the remaining substantive counts. At the later trial on the conspiracy count, the government sought to introduce evidence of the earlier convictions on the underlying substantive counts to impeach the defendant. We held that the evidence was more prejudicial than probative and thus inadmissible because the earlier convictions were based on substantive counts that made up the conspiracy. Id. at 1285. In the present case, however, Robinson's first conviction was obtained on a count charged in the superseding indictment, while his second trial involved counts charged in the third superseding indictment. Moreover, Robinson's marijuana-distribution conviction was based on a single controlled buy in August 2009, during which Robinson distributed one-half pound of marijuana to the CI. The drug-related conspiracy and attempt charges set forth in the third superseding indictment, on the other hand, were based on facts unrelated to that discreet sale, involving instead "protection" services and other illegal conduct occurring in 2012. Thus, the marijuana-distribution conviction was properly admitted at the second trial.

Robinson next argues that the district court abused its discretion by declining to recuse after hiring one of Robinson's former attorneys as a law clerk. Robinson's first trial was conducted in the United States District Court for the Eastern District of Arkansas in July 2013 by Judge James M. Moody, who continued to oversee the case until February 28, 2014, at which time the matter was reassigned to Chief Judge Brian S. Miller in anticipation of Judge Moody's retirement. On March 5, 2014, Margaret "Annie" Depper, who was employed at the time by the law firm representing

Robinson, entered an appearance in Robinson's case, but on April 2, 2014, she was granted leave to withdraw. Sometime later that month, Chief Judge Miller hired Depper as a law clerk. On April 17, 2014, Robinson filed a motion requesting that Chief Judge Miller recuse because Depper's status as Robinson's former defense counsel and Chief Judge Miller's current law clerk raised the appearance of impropriety. Robinson's motion was denied without a response from the government and without a hearing.

We review the denial of a motion to recuse for abuse of discretion. See United States v. Ruff, 472 F.3d 1044, 1046 (8th Cir. 2007). A judge must recuse when his "impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." Id. (quoting Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002) (en banc)). In Ruff, we found no abuse of discretion in the district court's refusal to recuse when the court's law clerk—the former federal prosecutor who had participated in the defendant's prosecution—was screened from the defendant's case and did not discuss it with the district court. See id. at 1046; see also United States v. Martinez, 446 F.3d 878, 883 (8th Cir. 2006) (rejecting same arguments involving same court and law clerk). We concluded that "an average observer informed of the[] facts and of [the law clerk's] lack of involvement in this case could not reasonably question [the court's] impartiality." Ruff, 472 F.3d at 1047.

The government filed a motion to supplement the record, which we now grant, see id. at 1047 n.4. See also Dakota Industries, Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63-64 (8th Cir. 1993). The motion includes a letter from the Honorable J. Thomas Ray, Chief United States Magistrate Judge for the Eastern District of Arkansas, which explains that, while Depper technically occupies one of Chief Judge Miller's law clerk positions, her substantive legal work involves only Social Security matters and is performed for the Eastern District of Arkansas magistrate judges, who interviewed Depper and recommended her to Chief Judge Miller for employment.

She performs only administrative functions for Chief Judge Miller and performs no work on his criminal cases. In light of "all the relevant facts" regarding Depper's employment, the district court's impartiality cannot be reasonably questioned, and it did not abuse its discretion in denying the motion to recuse.

Robinson next argues that the government did not produce sufficient evidence to establish that any false statement he allegedly made to the FBI during its investigation was also material, a required element in a prosecution under 18 U.S.C. § 1001(a)(2). We review the sufficiency of the evidence in the light most favorable to the verdict, according the evidence all reasonable inferences tending to support the verdict. See United States v. Robertson, 324 F.3d 1028 (8th Cir. 2003). We will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. See id.

Section 1001 prohibits an individual from "knowingly and willfully . . . mak[ing] any materially false, fictitious, or fraudulent statement or representation" in any matter within the jurisdiction of the federal government. "[I]n general, a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decision making body to which it was addressed." Robertson, 324 F.3d at 1030 (citations omitted). It is not necessary for the government to prove that it actually relied on the false statement for it to have been material. See United States v. Mitchell, 388 F.3d 1139, 1143 (8th Cir. 2004).

When Robinson was interviewed by the FBI, he initially denied parking his police car and waiting at the corner of Colonel Glenn Road and Shackleford on March 22, acknowledging that fact only after being told by the interviewing FBI agent that video surveillance placed him at the intersection. Robinson also denied that he left the intersection to follow a van transporting marijuana along Shackleford to a storage facility, and he continued to deny this conduct despite the fact that FBI surveillance photos along the route showed Robinson following the van in his police

car. Robinson also denied receiving money from his co-conspirator for providing this protection, even though audio and video recordings of the co-conspirator established that he had requested two separate shrink-wrapped bundles of $5,000 cash as payment for the protection, and Robinson was observed meeting with his co-conspirator shortly after the payment was made.

Robinson contends that this evidence is insufficient to show that his allegedly false statements were material, because the FBI agent who testified at Robinson's trial did not specifically describe the false statements as "material" in his testimony. We disagree. Robinson made these false statements to the FBI in an effort to influence its investigation by deflecting suspicion from himself. And because Robinson's false statements were, at the very least, "capable of influencing" the FBI's investigation, they were "materially false, fictitious, or fraudulent statement[s] or representation[s]," as required under § 1001. Viewed in the light most favorable to the jury's verdict, the evidence was sufficient to support Robinson's false-statement conviction.

Robinson next argues that the false-statement count, which was first charged in the second superseding indictment, was motivated by prosecutorial vindictiveness. Robinson did not file a motion to dismiss for prosecutorial vindictiveness either the second superseding indictment or the third superseding indictment, which of course also included the false-statement count. It was only after the second-trial jury returned its guilty verdict on that count that Robinson filed a motion requesting that the district court "grant a new trial and dismiss the conviction" because the false-statement count "was only pursued as a result of prosecutorial vindictiveness." On appeal, the parties frame the argument as a challenge to the denial of a motion to dismiss the indictment on the basis of prosecutorial vindictiveness, and they argue that the standard of review is abuse of discretion.

We recently addressed lingering "confusion" regarding the proper standard of review for district court rulings on vindictive prosecution. United States v. Chappell,

779 F.3d 872, 878 (8th Cir. 2015) (discussing claim of prosecutorial vindictiveness when superseding indictment secured after successful appeal includes both original and new charges), cert. denied, 2015 WL 5032381 (U.S. Oct. 5, 2015) (No. 15-5785). We review for abuse of discretion a district court's discretionary decisions, such as whether to allow discovery or hold an evidentiary hearing on a vindictiveness allegation. See id. at 879. But for challenges unrelated to these discretionary decisions, "we review the district court's legal conclusions de novo and its factual findings for clear error." Id. Because Robinson is not challenging a discretionary decision by the district court, our review would typically be governed by the *de novo*/clear-error standard. But because Robinson failed to raise his vindictiveness assertion prior to his second trial by objecting to either the second or third superseding indictment in a motion to strike the false-statement charge or in a motion to dismiss the entire indictment, we review only for plain error. See United States v. Washburn, 444 F.3d 1007, 1011 (8th Cir. 2006) (applying plain-error review when district court granted defendant's motion to dismiss several counts of second superseding indictment, mistrial was entered on remaining counts, third superseding indictment reinstated dismissed counts, and defendant failed to object to third superseding indictment before retrial).

"Although the government may take action to punish a defendant for committing a crime, punishing a defendant for exercising his valid legal rights is impermissible prosecutorial vindictiveness." United States v. Campbell, 410 F.3d 456, 461 (8th Cir. 2005). The defendant bears the "heavy" burden to show that the prosecution was vindictive, in light of the discretion prosecutors are given in performing their duties. United States v. Leathers, 354 F.3d 955, 961 (8th Cir. 2004). A defendant may prove prosecutorial vindictiveness through objective evidence or, in the absence of such evidence, "a defendant may, in *rare* instances, rely upon a presumption of vindictiveness if he provides sufficient evidence to show [that] a reasonable likelihood of vindictiveness exists." Chappell, 779 F.3d at 879 (citations omitted). Although the presumption "may arise when prosecutors increase the

-11-

number or severity of charges," it "does not arise just because action detrimental to the defendant was taken after the exercise of the defendant's legal rights; the context must also present a reasonable likelihood of vindictiveness." Campbell, 410 F.3d at 461, 462. Robinson argues that the government added the false-statement count in the second and third superseding indictments only because he invoked his right to a jury at his first trial and eventually obtained a mistrial on the most serious counts charged in the superseding indictment. He asserts that because the false-statement count was based on the same underlying facts and could have been charged earlier, he has shown a reasonable likelihood of vindictiveness and is entitled to the presumption thereof.

We have noted that there is "no realistic likelihood of vindictiveness . . . when a jury is deadlocked and both parties agree that a declaration of mistrial is a necessity." United States v. Rodgers, 18 F.3d 1425, 1430 (8th Cir. 1994). Nor is there a presumption of vindictiveness "when the government chooses to indict a defendant on individual acts that arose out of the same nucleus of facts which resulted in an earlier acquittal." Id. (adopting reasoning in United States v. Esposito, 968 F.2d 300, 303-07 (3d Cir. 1992)). This is so because, "[w]ithout more, adding new charges based on independent acts, even where the separate acts that prompted the new charges occurred in the same spree of activity, does not create a presumption of prosecutorial vindictiveness." Chappell, 779 F.3d at 881(citations omitted). For example, in United States v. Rodgers, after a jury acquitted the defendants on drug-possession charges and failed to reach a verdict on a conspiracy charge, the government filed two superseding indictments, recharging the conspiracy and adding firearm, aiding-and-abetting, and multiple distribution charges. 18 F.3d at 1427-28. We rejected the defendants' claims of vindictiveness, noting that the "additional charges . . . were brought by reindictment following a mistrial on the conspiracy charge, and not because the defendants elected to proceed initially by jury trial." Id. at 1430.

The false-statement count in this case was not added in response to Robinson's assertion of his right to a jury trial, but only after the jury had deadlocked and a mistrial was declared. The mistrial was not declared upon Robinson's motion and over the government's objection, nor was it the result of Robinson's assertion of any legal right. See id. (noting that "[c]ourts will not find prosecutorial vindictiveness when the reindictment was not a reaction to the defendant's assertion of some right." (citation omitted)). And although the false-statement count arose from the same general nucleus of facts referenced in the earlier indictment that resulted in a mistrial, the false-statement count was based on Robinson's separate and independent act of lying to the FBI about those facts. In sum, Robinson has failed to provide sufficient evidence to raise a presumption of vindictiveness, and so the district court did not commit plain error in rejecting Robinson's claim for relief on that ground.

The judgment is affirmed.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from the court's conclusion that the evidence of former Little Rock Police Department (LRPD) Detective Charles Weaver's misconduct was not material to the defendant's conviction for marijuana distribution. Weaver was the main witness who testified for the government on this charge, and his misconduct was strongly impeaching evidence. The defendant, former LRPD police officer Randall Robinson, was deprived of a fair trial by not being able to use it.

Weaver was the architect of the sting operation against Robinson, and he was the government's primary witness on the marijuana-distribution charge. But he was fired by his department two months after Robinson's trial for taking money from the department's property room and forging the signatures of the rightful owners, just a few months before he testified at Robinson's trial. This type of evidence goes directly to a law enforcement officer's credibility; and given the nature of the

-13-

evidence presented generally against Robinson, it is likely to have gone a long way toward discrediting Weaver's testimony if the jury had heard it.

Another LRPD Detective, Rick Kiser, did testify that he saw Robinson sell drugs to a confidential informant (CI). But even if Kiser's testimony alone would have been enough to support Robinson's marijuana-distribution conviction, that doesn't mean that evidence of Weaver's misconduct was not material. "A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." Kyles v. Whitley, 514 U.S. 419, 434–35 (1995). Thus, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id. at 434.

Kiser's testimony was problematic even before evidence of Weaver's misconduct was uncovered. Weaver did not witness the drug transaction between the CI and Robinson; Kiser was the only person who testified at trial who claimed to have done so. Yet, Kiser's testimony four years after the fact was inconsistent with a police report Weaver wrote only a week after the controlled buy. On cross-examination, Weaver agreed that his report indicated instead that Kiser simply showed up, saw "Robinson at the back of a pickup with two other men," and then drove away. The report went on to state that the CI contacted Weaver an hour after Kiser exited the complex to report that the transaction was complete. Weaver said at trial that he "made a mistake" when writing his report, but admitted "[t]hat's what [the report] says."

At trial, Weaver tried to clear up this inconsistency by testifying that he only learned that Kiser witnessed Robinson's handing the informant a package after he had typed up his report, which was seven days after the transaction. But Kiser testified differently. Kiser claimed he was in contact with Weaver during the controlled buy

-14-

and told him in real-time that he had observed the hand-off. Given these discrepancies, if a jury had been allowed to hear about Weaver's misconduct, it may have discounted not only Weaver's testimony, but Kiser's as well. Evidence that the key witness against a fellow police officer in a criminal case was himself purportedly involved in criminal activity in connection with police business might easily have reflected badly on the Little Rock Police Department as a whole, and by extension, on Kiser's credibility as a member of that department. See Kyles, 514 U.S. at 445 ("[T]he effective impeachment of one eyewitness can call for a new trial even though the attack does not extend directly to others . . . .").

Evidence of Weaver's misconduct was material not just because of the weaknesses in Kiser's testimony, but also because the government's case depended on Weaver's testimony to a large extent.[3] Much of the evidence concerning the sting operation against Robinson came in through Weaver's testimony – and could only have come in through his testimony. Weaver was the one who had the confidential informant call Robinson, the one who identified Robinson's voice over the phone, the one who searched the informant and his car to make sure there was no contraband there prior to the controlled buy, and the one who provided the cash for the informant to use in the transaction. He also testified that he was the officer who had visual contact with the CI "when [he] met with him, followed him to the scene, and then afterwards when [he] followed him back to the meeting location." In other words, Weaver was the officer who monitored the CI's whereabouts to ensure he did not engage in wrongdoing or stray from the scripted plan.

Not insignificantly, Weaver also testified that he was the officer who took custody of the package from the CI. Weaver then transported it to the police department and "logged, tagged, and stored it in the Little Rock Police Department

---

[3]No photographs or other physical evidence of the controlled buy, like the currency notes that were allegedly used, were ever introduced by the government.

property system." Weaver testified that he "sealed the evidence with evident tamper tape," and "initialed and dated" across the tape "to ensure that if it was tampered with, it'd be obvious to [him]." Yet the impeachment evidence would have suggested to the jury that Weaver was not a trustworthy custodian of the department's property room, and that he was not above tampering with evidence himself. In short, Weaver's testimony was central to the government's case. And it is hard to see how the introduction of evidence significantly impeaching his credibility would not "put the whole case in such a different light as to undermine confidence in the verdict." Id. at 435.

Because I believe the evidence of Weaver's misconduct was material, I think we cannot avoid the question of whether that evidence is subject to Brady's disclosure obligations in the first place. In my view, it is. First, the application of Brady does not depend on the prosecutor's culpability for the non-disclosure, but rather on whether the non-disclosure deprived the defendant of a fair trial. See United States v. Agurs, 427 U.S. 97, 110 & n.6 (1976) (holding that the prosecution's "constitutional obligation [to disclose] is [not] measured by the moral culpability, or the willfulness, of the prosecutor."); see also Strickler v. Greene, 527 U.S. 263, 288 (1999) ("[U]nder Brady an inadvertent nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment"); Smith v. Phillips, 455 U.S. 209, 219–20 (1982); Brady, 373 U.S. at 87–88; Porter v. White, 483 F.3d 1294, 1305 (11th Cir. 2007) ("The Brady rule thus imposes a no-fault standard of care on the prosecutor. If favorable, material evidence exclusively in the hands of the prosecution team fails to reach the defense – for whatever reason – and the defendant is subsequently convicted, the prosecution is charged with a Brady violation, and the defendant is entitled to a new trial."); United States ex rel. Smith v. Fairman, 769 F.2d 386, 392 (7th Cir. 1986) ("Brady was aimed at ensuring that an accused receives a fair trial rather than punishing the prosecutor for failing to disclose exculpatory evidence"). Thus, the fact that the prosecutor in this case was, by all accounts, in no

-16-

position to learn of and disclose Weaver's alleged misconduct prior to trial does not compel the conclusion that no Brady violation occurred.

Second, "Brady suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor.'" Youngblood v. West Virginia, 547 U.S. 867, 869–70 (2006) (per curiam) (quoting Kyles, 514 U.S. at 438); Kyles, 514 U.S. at 437 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."); see also D'Ambrosio v. Marino, 747 F.3d 378, 389 (6th Cir. 2014); United States v. Osorio, 929 F.2d 753, 762 (1st Cir. 1991) ("Ultimately, regardless of whether the prosecutor is able to frame and enforce directives to the investigative agencies to respond candidly and fully to disclosure orders, responsibility for failure to meet disclosure obligations will be assessed by the courts against the prosecutor and his office.").[4]

It follows that "[t]he State's failure to disclose exculpatory evidence, including impeachment evidence, in its possession constitutes a Brady violation, irrespective of the good faith or bad faith of the prosecution, and regardless of whether the information is known only by the police and not the prosecutor." Lewis v. Conn. Comm'r of Corr., 790 F.3d 109, 122 (2d Cir. 2015) (citations omitted). One could conceivably carve out an exception to this rule based on the fact that in this case, presumably only Weaver knew of his own misconduct. But I see no meaningful way

---

[4]I question whether our decision in United States v. Kern, 12 F.3d 122, 126 (8th Cir. 1993), which held that Brady does not apply to cases where the undisclosed evidence was not "in the prosecutor's files," can be reconciled with the Supreme Court's decision two years later in Kyles, 514 U.S. at 438, which rejected the claim that Brady does not apply to "evidence known only to police investigators and not to the prosecutor." Kern also suggested that the knowledge of state officials may not be imputable to a federal prosecutor; but at the time of trial Weaver was assigned to the FBI, and there is no indication that this was not the case at the time of his alleged misconduct a few months earlier. Kern, 12 F.3d at 126.

to distinguish this situation from one in which a single officer is the only person involved with the prosecution who knows of any other type of exculpatory or impeaching evidence. That Detective Weaver might have to incriminate himself in order to satisfy Brady presents a dilemma for Detective Weaver. But the Brady regime is no-fault, and focuses on "assur[ing] the defendant a 'fair trial,'" not on assessing the culpability of the prosecutor. United States v. Jones, 34 F.3d 596, 600 (8th Cir. 1994). The fact that the prosecutor was not at fault does not change the fact that Robinson was convicted by a jury that did not have access to material evidence, depriving him of his right to a fair trial. Kyles, 514 U.S. at 434.

I also see no reason why impeachment evidence involving misconduct that is not directly case-related can never be Brady evidence. Rather, the extent to which the misconduct relates to the case is a factor – indeed, an important one – in determining whether the undisclosed evidence is material. Take for example a key government trial witness who has admitted to lying under oath to secure a conviction when testifying in numerous past trials. Would that "unrelated" misconduct not cast serious doubt on the fairness of the trial, simply because the misconduct occurred in other, earlier trials?[5] Although Weaver's misconduct was not part of his investigation into

---

[5]United States v. Robinson expresses the concern that unless the doctrine of Brady imputation is narrowed, it would undermine the rules restricting new trials under Rule 33 of the Federal Rules of Criminal Procedure. 627 F.3d 941, 952 (4th Cir. 2010). But a number of Rule 33 motions are based on newly-discovered evidence that would not give rise to a Brady claim because the evidence was not in the possession of any government official. Rule 33's restrictions on new trials would remain intact in such cases. And Robinson's concern that past Rule 33 cases "should all have instead been Brady cases," id., is belied by the fact that a number of Rule 33 motions based on newly-discovered evidence *have* often been brought as Brady claims. See, e.g., United States v. Tate, 633 F.3d 624, 628, 629–31 (8th Cir. 2011); United States v. Dittrich, 204 F.3d 819, 821–22 (8th Cir. 2000); Kern, 12 F.3d at 125–26.

Robinson, the fact that it occurred just months before trial while Weaver was acting in the course of his official duties makes it highly probative of his credibility.

Straightforward application of the Supreme Court's <u>Brady</u> case law would not place prosecutors in an impossible position.[6] It is likely a rare case where undisclosed misconduct so clearly affects the credibility of a witness central to the government's case, or is material to the conviction. But as the facts of this case show, rare is not never. I would therefore find that Weaver is entitled to a new trial on his conviction for distributing approximately half a pound of marijuana on August 4, 2009.[7]

I also respectfully disagree with the court's decision to grant the government's motion to supplement the record with a letter from Chief Magistrate Judge Thomas Ray explaining the type of work Annie Depper performs as a law clerk. The Federal Rules of Appellate Procedure permit supplementing the record on appeal only "[i]f anything material to either party is omitted from or misstated in the record by error or accident." Fed. R. App. P. 10(e)(2). Chief Magistrate Judge Ray's letter was not omitted from the record by error or accident; it did not exist when the appeal was

----

[6]I disagree that "full interviews and background checks on everyone who touched the case" would be necessary – or even effective. <u>Robinson</u>, 627 F.3d at 952. Instead, a prosecutor could potentially mitigate the risk of a retrial by allowing government witnesses who were closely involved in the prosecution to simply recuse themselves from a case such as this one without further comment. <u>Cf.</u> <u>Kyles</u>, 514 U.S. at 438 ("In the State's favor it may be said that no one doubts that police investigators sometimes fail to inform a prosecutor of all they know. But neither is there any serious doubt that procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it." (internal quotation marks omitted) (alteration in original)).

[7]How the granting of a new trial on the marijuana-distribution charge would affect Robinson's conviction on the false-statement charge is a question I would leave for the district court on remand.

taken. It would therefore be inappropriate for us to consider it at this stage. Instead, I would hold that even without consulting the information contained in the letter, Chief Judge Miller did not abuse his discretion in declining to recuse himself after Depper was hired. See United States v. Casas, 376 F.3d 20, 23 (1st Cir. 2004) ("Judges are under no obligation to provide a statement of reasons for recusal." (quotation marks omitted)).

I otherwise join the opinion of the court.

_____