# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1616

_____

United States of America,                    *
                                              *
            Appellee,                         *
                                              *    Appeal from the United States
    v.                                        *    District Court for the
                                              *    Northern District of Iowa.
Shaun Joseph Ruff,                            *
                                              *
            Appellant.                        *

_____

Submitted: September 28, 2006
Filed: January 9, 2007

_____

Before RILEY and COLLOTON, Circuit Judges, and KYLE,[1] District Judge.

_____

KYLE, District Judge.

Shaun J. Ruff pled guilty to conspiring to distribute cocaine and marijuana. He now appeals, challenging two rulings of the district court[2] at sentencing. We affirm.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

[2] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

## I. BACKGROUND

On six occasions between July and December 2002, Ruff sold marijuana and cocaine to a confidential informant and to undercover police officers. He drove his Chevrolet Blazer to each of the drug sales. Law enforcement expended $9,985 in controlled buy money to purchase the drugs. The buy money was supplied by the Iowa Division of Narcotics Enforcement ("Iowa DNE"). On December 12, Ruff was arrested. At the time of his arrest, law enforcement seized Ruff's Blazer, $1,476 in currency found on his person, a small amount of marijuana, and other personal items.

Ruff was charged with conspiracy to distribute 500 or more grams of cocaine and marijuana and, on September 30, 2003, he executed a plea agreement admitting the charged offenses. Pursuant to the plea agreement, Ruff agreed "to pay restitution, as ordered by the Court, for controlled buy money expended during the investigation." Ruff also agreed to forfeit his Blazer, as well as items seized from his person and residence upon arrest. The plea agreement provided that the restitution would "be paid to the Clerk of Court for eventual disbursement to the Iowa Division of Narcotics Enforcement."

At sentencing, Ruff requested that the district court offset the value of the forfeited Blazer and currency against the restitution order. The district court denied the request and Ruff appealed to this Court. We reversed and remanded, instructing the district court that "[i]f Ruff can establish the Iowa DNE received any forfeiture funds [it] shall modify the restitution order to prevent double recovery by the Iowa DNE." United States v. Ruff, 420 F.3d 772, 776 (8th Cir. 2005).

During the pendency of Ruff's appeal, Judge Reade hired Special Assistant United States Attorney (SAUSA) Teresa Baumann as a law clerk. Baumann had handled Ruff's prosecution during her tenure as an SAUSA. On January 14, 2006, Ruff moved for Judge Reade's recusal based upon Baumann's prior involvement in his prosecution. On January 25, 2006, the district court denied the motion and stated

that Baumann had been screened from the court's criminal docket and would not be involved in its decisions in the instant case. It also stated that Baumann would not be present in chambers during Ruff's sentencing.

On January 27, 2006, the district court held an evidentiary hearing on the restitution issue. On February 2, 2006, it denied Ruff's request to reduce the restitution owed to the Iowa DNE and determined that "there is no evidence the Iowa DNE received, either directly or indirectly, funds derived from the forfeiture of Defendant's property. The forfeiture funds went to the [Bear Creek Narcotics] Task Force, except for funds retained by the United States Marshal or sent to the federal government's asset forfeiture fund. Therefore, there is no danger of double recovery on the part of the Iowa DNE on account of the court's restitution order." This appeal followed.

## II.    DISCUSSION

### A.    Recusal

We first address Ruff's contention that the district court erred when it denied his motion for recusal. The denial of a motion to recuse is reviewed for abuse of discretion. Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002) (en banc). A judge must recuse when his or her "impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." Id. at 648 (quoting In re Kan. Pub. Employees Ret. Sys., 85 F.3d 1353, 1358 (8th Cir. 1996)); 28 U.S.C. § 455(a).

We have already had occasion to consider – and reject – Ruff's argument. In United States v. Martinez, 446 F.3d 878 (8th Cir. 2006), the defendant sought Judge Reade's recusal because Baumann[3] had assisted in Martinez's prosecution while she

_____

[3]Judge Reade hired Baumann as a law clerk in July 2005.

was an SAUSA and had "presented Martinez's case to the Grand Jury, signed the indictment, represented the United States in the early pretrial phase of the prosecution, and cross-examined Martinez at a suppression hearing." Id. at 883. Judge Reade denied Martinez's motion and this Court affirmed, holding that "[a]n average observer who was informed of all the facts of Martinez's case, including that Baumann was screened from the case and performed only ministerial duties at the [sentencing] hearing, would not reasonably question Judge Reade's impartiality." Id.

Ruff attempts to distinguish Martinez by demonstrating that Baumann's involvement in his prosecution was more extensive than her involvement in Martinez's prosecution. This is a distinction without a difference, however, because Baumann was screened from the case and did not discuss it with Judge Reade. Furthermore, in the instant case, Baumann did not perform ministerial functions at the hearing, as she did in Martinez. Instead, Baumann was absent from the Judge's chambers on the day of the hearing. An average observer, informed of these facts, would not reasonably question Judge Reade's impartiality.

Ruff also contends that Chief Judge Loken's concurring opinion in Ruff's first appeal suggests that Baumann's employment as Judge Reade's law clerk created the appearance of impartiality. Chief Judge Loken urged the district court to investigate what appeared to be potentially illegal attempts by the government to collect financial penalties on Ruff's restitution obligations. See Ruff, 420 F.3d at 776-77 (Loken, C.J., concurring).

On remand, the district court noted, and Ruff concedes, that Chief Judge Loken's concerns were not directed at Baumann, but at a different prosecutor. The district court also held a meeting in chambers, attended by the United States Attorney for the Northern District of Iowa and Ruff's counsel, and determined that no

-4-

wrongdoing had occurred.[4] We conclude that an average observer informed of these facts and of Baumann's lack of involvement in this case could not reasonably question Judge Reade's impartiality.

### B. Forfeiture Offset

Ruff next argues that the district court erred in denying his request to offset the restitution amount with the proceeds from the confiscated items. Ruff made this same argument in his initial appeal; we concluded that "the bar against double recovery should operate in the context of this case to preclude the Iowa DNE from recovering an amount greater than the agency expended on controlled drug buys in Ruff's case." Ruff, 420 F.3d at 775. Accordingly, we held that on remand, "[i]f Ruff can establish the Iowa DNE received any forfeiture funds, the district court shall modify the restitution order to prevent double recovery by the Iowa DNE." Id. at 776. On remand, the district court determined that the Iowa DNE did not receive any of the proceeds from the confiscated items, a finding we review for clear error. United States v. Williams, 359 F.3d 1019, 1020 (8th Cir. 2004).

There is no reason to conclude, and Ruff does not contend, that the district court clearly erred when it found that the Iowa DNE did not receive any of the proceeds from the confiscated items. Rather, Ruff contends that the Iowa DNE *should* have received a portion of the proceeds from the confiscated items and that these proceeds should offset his restitution obligation. Ruff presents two arguments in support of this contention: 1) the Iowa DNE is, in essence, the same entity as the Task Force, and 2)

---

[4]The details of this meeting were set forth in an April 19, 2006 letter from Judge Reade to Chief Judge Loken. The United States has moved to supplement the record on appeal to include this letter. An appellate court may supplement the record to include "anything material to either party [that] is omitted from or misstated in the record by error or accident . . . ." Fed. R. App. P. 10(e)(2)(c). This letter is material to the record because it fully describes the district court's actions in response to Chief Judge Loken's concerns; accordingly, we grant the motion to supplement the record.

if the Iowa DNE and the Task Force are separate entities, federal law mandates that a portion of the forfeited property be given to the Iowa DNE. Neither argument is persuasive.

Ruff argues that the Iowa DNE and the Task Force are the same entity because certain Iowa DNE agents are members of the Task Force and receive training from the Task Force. This argument was presented to – and rejected by – the district court. The district court concluded that the Task Force had a separate budget from the Iowa DNE and that the executive board that oversees the Task Force is composed of a DEA agent, an Iowa DNE agent, and several police chiefs and county sheriffs from the surrounding area. Given these facts, it was not clearly erroneous for the district court to conclude that the Task Force and the Iowa DNE are distinct entities and that the forfeited property provided to the Task Force should not offset Ruff's restitution obligations to the Iowa DNE.

Ruff also argues that federal law requires that the Iowa DNE be paid a portion of the funds from his forfeited property because it "had significant participation in the law enforcement effort" leading to his arrest. Ruff did not present this argument to the district court and raises it for the first time here. In the context of a criminal proceeding, we review arguments not presented to the district court for plain error. United States v. Willis, 433 F.3d 634, 637 (8th Cir. 2006). "Under the plain error standard, we will only reverse obvious errors which affect a defendant's substantial rights and seriously affect the fairness, integrity, or public reputation of judicial proceedings." United States v. Hart, 397 F.3d 643, 647 (8th Cir. 2005) (citations omitted).

21 U.S.C. § 881(e)(3) provides that "[t]he Attorney General shall assure that any property transferred to a State or local law enforcement agency . . . (A) has a value that bears a reasonable relationship to the degree of direct participation of the State or local agency in the law enforcement effort resulting in the forfeiture . . . and (B) will

serve to encourage further cooperation between the recipient State or local agency and Federal law enforcement agencies." It is not "obvious" that this statute confers on Ruff either substantive rights or the ability to challenge the distribution of the forfeited property. Instead, it directs the Attorney General on the proper allocation of forfeiture funds between federal and state or local law enforcement agencies. Accordingly, we conclude that the district court did not plainly err in denying Ruff's request to offset the restitution amount with the forfeiture proceeds.

## III.  CONCLUSION

For the reasons set forth above, we affirm the decision of the district court.

_____