WOLLMAN, Circuit Judge.
In June 2012, Randall Tremayn Robinson, a former officer of the Little Rock, Arkansas, Police Department (LRPD), was charged in a multi-count indictment with distributing one-half pound of marijuana to a confidential informant (Cl), conspiring and attempting to aid and abet possession with intent to distribute 1000 pounds of marijuana, possessing a firearm in furtherance of a drug-trafficking crime, and mis- *995 prisión of felony. The charges stemmed from allegations that Robinson, in his official capacity as a police officer, provided protection for shipments of marijuana being delivered to drug traffickers in Little Rock. Robinson proceeded to trial on a superseding indictment, and in July 2013, a jury found him guilty of distributing one-half pound of marijuana to a Cl but was unable to reach a verdict on the remaining counts. The government then dismissed the firearm count, and the district court[1] declared a mistrial on the remaining counts. In February 2014, Robinson was charged in a third superseding indictment with the counts on which a mistrial was declared and with new counts alleging that he had used a telephone to commit and facilitate a drug felony and that he had made material false statements to agents of the United States. A jury found Robinson guilty of making material false statements, but acquitted him on the remaining counts. The district court[2] sentenced Robinson to concurrent one-month terms of imprisonment on the two convictions. Robinson appeals, and we affirm.
Robinson first argues that the government failed to disclose evidence favorable to his defense in violation of Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that the district court abused its discretion by denying his motion for a new trial based on that violation, see United States v. Sanchez-Florez, 533 F.3d 938, 941 (8th Cir.2008) (standard of review). The alleged Brady violation was related to the testimony of then-LRPD Detective Charles Weaver at Robinson’s first trial. Weaver, who was employed by the LRPD but assigned to the FBI at the time of Robinson’s trial, testified that on August 4, 2009, he met with a Cl, arranged for the Cl to conduct a controlled buy of marijuana from Robinson, provided the Cl with $600 in LRPD buy money, took possession of the marijuana after the controlled buy was completed, and prepared the police report documenting the events. It was this transaction that formed the basis for Robinson’s marijuana-distribution conviction.
In December 2013, after his first trial had ended in the marijuana-distribution conviction but before his second trial began, Robinson filed a motion for a new trial. Robinson had recently learned that in August 2013, the LRPD had initiated an investigation into discrepancies in LRPD property-room documentation filed by Weaver. The investigation resulted in allegations that Weaver had forged the signatures of two property owners on LRPD property-room receipts in February 2013, falsely indicating that he had returned roughly $9,000 in cash to its owners when, instead, he had presumably kept the cash for himself. Weaver lied to investigators when he was questioned about the incidents, initially asserting that he had returned the cash to its owners and later recanting that statement: Weaver was fired by the LRPD in September 2013, although the allegations against him had not been finally determined. As is apparent from the sequence of events, both the initial discovery of these discrepancies by the LRPD and the ensuing investigation occurred after Robinson’s first trial.
Robinson argued in his new trial motion that the government had a duty under Brady to disclose this misconduct prior to Weaver’s testimony at Robinson’s trial— even if that misconduct was known only to *996 Weaver himself at the time — because Weaver was a member of the prosecution team and, as such, his knowledge of his own wrongdoing was attributable to the government. See Kyles v. Whitley, 514 U.S. 419, 437-38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Robinson argued that Weaver’s misconduct was material impeachment evidence that reasonably could have affected the outcome of his trial. After a hearing, the district court denied Robinson’s motion, concluding that because Weaver alone had knowledge of his own misconduct and because that misconduct was completely unrelated to the case against Robinson, Weaver’s knowledge would not be attributed to the prosecution. The court also noted that the government’s case did not rest solely on Weaver’s testimony, because LRPD Detective Rick Kiser, who also testified at Robinson’s trial, had personally observed Robinson hand the Cl a plastic-wrapped package that was later proved to contain one-half pound of marijuana.
On appeal, Robinson reiterates his Bra-<%-violation arguments, asserting that he is entitled to a new trial on the marijuana-distribution conviction because the government improperly suppressed material impeachment evidence regarding Weaver and that he is entitled to a new trial on the false-statement conviction because the marijuana-distribution conviction obtained in violation of Brady was introduced at his second trial to shore up the government’s otherwise weak case.
Under Brady and its progeny, prosecutors have a duty to disclose to the defense all material evidence favorable to the accused, including impeachment and exculpatory evidence. See Kyles, 514 U.S. at 432-34, 115 S.Ct. 1555; United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). This duty extends not only to evidence of which a prosecutor is aware, but also to material “favorable evidence known to the others acting on the government’s behalf in the case, including the police.” Kyles, 514 U.S. at 437, 115 S.Ct. 1555. Such evidence is “material” only if there is a “reasonable probability” that, had it been disclosed, “the result of the proceeding would have been different.” Strickler v. Greene, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting Bagley, 473 U.S. at 682, 105 S.Ct. 3375). “The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” Id. at 289-90, 119 S.Ct. 1936 (quoting Kyles, 514 U.S. at 434, 115 S.Ct. 1555).
Because “[a] prosecutor has a duty to disclose evidence known by police officers, even if not known by the prosecutor,” a prosecutor has an attendant duty to learn of such evidence. United States v. Tyndall, 521 F.3d 877, 882 (8th Cir.2008). This attendant duty to learn of material and favorable exculpatory or impeachment evidence necessarily anticipates that a prosecutor will have an opportunity to discover such evidence through the exercise of reasonable diligence. In a case such as this, however, when the evidence at issue is misconduct by a government witness, and that misconduct is unrelated to the investigation or prosecution of the defendant, is known only to the witness himself, and could not have been discovered by the prosecutor through the exercise of reasonable diligence, we are reluctant to conclude that such evidence should be imputed to the prosecutor. See United States v. Robinson, 627 F.3d 941, 952 (4th Cir.2010) (noting that courts have refused to extend the Brady imputed-knowledge doctrine if it “would cut against the agency principles *997 underlying imputed knowledge and would require prosecutors to do full interviews and background checks on everyone who touched the case”); see also United States v. Kern, 12 F.3d 122, 126 (8th Cir.1993); cf. United States v. Lee Vang Lor, 706 F.3d 1252, 1259 (10th Cir.) (noting in suppression-hearing context that, regardless of Brady’s application, “[w]e do not think prosecutors have a duty to investigate officers’ actions in entirely unrelated cases just in case some impeaching evidence may show up”), cert. denied, — U.S. -, 134 S.Ct. 679, 187 L.Ed.2d 548 (2013).
Whatever the reach of Brady’s imputed-knowledge doctrine in other situations, Robinson has failed to show that the alleged Brady evidence was material. Undisclosed evidence, including impeachment evidence, is “material” for Brady purposes only if it “could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.” Kyles, 514 U.S. at 435, 115 S.Ct. 1555. Here, Weaver was not the only officer to testify about the controlled drug buy that resulted in Robinson’s marijuana-distribution conviction. As noted by the district court, Detective Kiser, who was assigned to conduct visual surveillance of the controlled buy, testified that he observed Robinson and the Cl arrive at the location for the buy, that he identified Robinson when Robinson exited his vehicle at that location, that Robinson and the Cl “made an exchange,” and that he saw' Robinson hand the Cl a plastic-wrapped package that was later confirmed to contain marijuana. Even if evidence regarding Weaver’s misconduct had been disclosed to Robinson and had been used to impeach Weaver’s testimony, there is no reasonable probability that Robinson would have been acquitted of the marijuana-distribution charge, given Kiser’s eyewitness testimony. We are satisfied that Robinson received a fair trial that resulted in a verdict worthy of confidence. See Strickler, 527 U.S. at 289-90, 119 S.Ct. 1936. The district court thus did not abuse its discretion in denying Robinson’s motion for a new trial on the marijuana-distribution conviction.
Because the marijuana-distribution conviction was not obtained in violation of Brady, we reject Robinson’s argument that the government’s introduction of that conviction at his second trial entitles him to a new trial on the false-statement charge. Likewise, we reject Robinson’s argument that the district court abused, its discretion by admitting evidence of the marijuana-distribution conviction. See United States v. Horton, 756 F.3d 569, 579 (8th Cir.) (standard of review), cert. denied, — U.S. -, 135 S.Ct. 122, 190 L.Ed.2d 93 (2014). Evidence is admissible under Federal Rule of Evidence 404(b) if it is “(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) proven by a preponderance of the evidence; and (4) if the potential prejudice does not substantially outweigh its probative value.” United States v. Thomas, 398 F.3d 1058, 1062 (8th Cir.2005). A prior conviction for distributing drugs is “relevant under Rule 404(b) to show knowledge and intent to commit a current charge.of conspiracy to distribute drugs.” Horton, 756 F.3d at 579. Moreover, “[p]rior felony drug convictions are relevant to show intent and knowledge in a drug prosecution when a defendant makes a general denial defense, which necessarily places the defendant’s state of mind at issue.” United States v. Banks, 706 F.3d 901, 907 (8th Cir.2013) (quoting United States v. Hawkins, 548 F.3d 1143, 1147 (8th Cir.2008)). The third superseding indictment charged Robinson with two drug-related counts, including conspiracy to aid and abet the distribution of marijuana. His earlier marijuana-distribution convic *998 tion was thus relevant and admissible to show knowledge and intent. In addition, Robinson’s defense at his second trial was that he had no knowledge of the marijuana being transported in the vehicle he was following and that he did not know why he had been asked to follow that vehicle in his police cruiser. This general-denial defense placed Robinson’s state of mind at issue, and evidence of his earlier marijuana-distribution conviction was relevant to show knowledge.
Robinson cites United States v. Burkhead, 646 F.2d 1283 (8th Cir.1981), in support of his argument that because the marijuana-distribution conviction resulting from his first trial was “a separate count on the same indictment” as the counts charged at his second trial, that conviction should hot have been admitted. In Burk-head, a conspiracy count was severed from the indictment, and the defendant was thereafter convicted after a trial on the remaining substantive counts. At the later trial on the conspiracy count, the government sought to introduce evidence of the earlier convictions on the underlying substantive counts to impeach the defendant. We held that the evidence was more prejudicial than probative and thus inadmissible because the earlier convictions were based on substantive counts that made up the conspiracy. Id. at 1285. In the present case, however, Robinson’s first conviction was obtained on a count charged in the superseding indictment, while his second trial involved counts charged in the third superseding indictment. Moreover, Robinson’s marijuana-distribution conviction was based on a single controlled buy in August 2009, during which Robinson distributed one-half pound of marijuana to the Cl. The drug-related conspiracy and attempt charges set forth in the third superseding indictment, on the other hand, were based on facts unrelated to that discreet sale, involving instead “protection” services and other illegal conduct occurring in 2012. Thus, the marijuana-distribution conviction was properly admitted at the second trial.
Robinson next argues that the district court abused its discretion by declining to recuse after hiring one of Robinson’s former attorneys as a law clerk. Robinson’s first trial was conducted in the United States District Court for the Eastern District of Arkansas in July 2013 by Judge James M. Moody, who continued to oversee the case until February 28, 2014, at which time the matter was reassigned to Chief Judge Brian S. Miller in anticipation of Judge Moody’s retirement. On March 5, 2014, Margaret “Annie” Depper, who was employed at the time by the law firm representing Robinson; entered an appearance in Robinson’s case, but on April 2, 2014, she was granted leave to withdraw. Sometime later that month, Chief Judge Miller hired Depper as a law clerk. On April 17, 2014, Robinson filed a motion requesting that Chief Judge Miller recuse because Depper’s status as Robinson’s former defense counsel and Chief Judge Miller’s current law clerk raised the appearance of impropriety. Robinson’s motion was denied without a response from the government and without a hearing.
We review the denial of a motion to recuse for abuse of discretion. See United States v. Ruff, 472 F.3d 1044, 1046 (8th Cir.2007). A judge must recuse when his “impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case.” Id. (quoting Moran v. Clarke, 296 F.3d 638, 648 (8th Cir.2002) (en banc)). In Ruff, we found no abuse of discretion in the district court’s refusal to recuse when the court’s law clerk — -the former federal prosecutor who had participated in the defendant’s prosecution — was screened *999 from the defendant’s case and did not discuss it with the district court. See id. at 1046; see also United States v. Martinez, 446 F.3d 878, 888 (8th Cir.2006) (rejecting same arguments involving same court and law clerk). We concluded that “an average observer informed of the[] facts and of [the law clerk’s] lack of involvement in this case could not reasonably question [the court’s] impartiality.” Ruff, 472 F.3d at 1047.
The government filed a motion to supplement the record, which we now grant, see id. at 1047 n. 4. See also Dakota Industries, Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63-64 (8th Cir.1993). The motion includes a letter from the Honorable J. Thomas Ray, Chief United States Magistrate Judge for the Eastern District of Arkansas, which explains that, while Dep-per technically occupies one of Chief Judge Miller’s law clerk positions, her substantive legal work involves only Social Security matters and is performed for the Eastern District of Arkansas magistrate judges, who interviewed Depper and recommended her to Chief Judge Miller for employment. She performs only administrative functions for Chief Judge Miller and performs no work on his criminal cases. In light of “all the relevant facts” regarding Depper’s employment, the district court’s impartiality cannot be reasonably questioned, and it did not abuse its discretion in denying the motion to recuse.
Robinson next argues that the government did not produce sufficient evidence to establish that any false statement he allegedly made to the FBI during its investigation was also material, a required element in a prosecution under 18 U.S.C. § 1001(a)(2). We review the sufficiency of the evidence in the light most favorable to the verdict, according the evidence all reasonable inferences tending to support the verdict. See United States v. Robertson, 324 F.3d 1028 (8th Cir.2003). We will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. See id.
Section 1001 prohibits an individual from “knowingly and willfully ... mak[ing] any materially false, fictitious, or fraudulent statement or representation” in any matter within the jurisdiction of the federal government. “[I]n general, a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decision making body to which it was addressed.” Robertson, 324 F.3d at 1030 (citations omitted). It is not necessary for the government to prove that it actually relied on the false statement for it to have been material. See United States v. Mitchell, 388 F.3d 1139, 1143 (8th Cir.2004).
When Robinson was interviewed by the FBI, he initially denied parking his police car and waiting at the corner of Colonel Glenn Road and Shackleford on March 22, acknowledging that fact only after being told by the interviewing FBI agent that video surveillance placed him at the intersection. Robinson also denied that he left the intersection to follow a van transporting marijuana along Shackleford to a storage facility, and he continued to deny this conduct despite the fact that FBI surveillance photos along the route showed Robinson following the van in his police car. Robinson also denied receiving money from his co-conspirator for providing this protection, even though audio and video recordings of the co-conspirator established that he had requested two separate shrink-wrapped bundles of $5,000 cash as payment for the protection, and Robinson was observed meeting with his co-conspirator shortly after the payment was made.
Robinson contends that this evidence is insufficient to show that his allegedly false statements were material, because the *1000 FBI agent who testified at Robinson’s trial did not specifically describe the false statements as “material” in his testimony. We disagree. Robinson made these false statements to the FBI in an effort to influence its investigation by deflecting suspicion from himself. And because Robinson’s false statements were, at the very least, “capable of influencing” the FBI’s investigation, they were “materially false, fictitious, or fraudulent statements] or representation[s],” as required under § 1001. Viewed in the light most favorable to the jury’s verdict, the evidence was sufficient to support Robinson’s false-statement conviction.
Robinson next argues that the false-statement count, which was first charged in the second superseding indictment, was motivated by prosecutorial vindictiveness. Robinson did not. file a motion to dismiss for prosecutorial vindictiveness either the second superseding indictment or the third superseding indictment, which of course also included the false-statement count. It was only after the second-trial jury returned its guilty verdict on that count that Robinson filed a motion requesting that the district court “grant a new trial and dismiss the conviction” because the false-statement count “was only pursued as a result of prosecutorial vindictiveness.” On appeal, the parties frame the argument as a challenge to the denial of a motion to dismiss the indictment on the basis of prosecutorial vindictiveness, and they argue that the standard of review is abuse of discretion.
We recently addressed fingering “confusion” regarding the proper standard of review for district court rulings on vindictive prosecution. United States v. Chappell, 779 F.3d 872, 878 (8th Cir.2015) (discussing claim of prosecutorial vindictiveness when superseding indictment secured after successful appeal includes both original and new charges), cert. denied, — U.S. -, 136 S.Ct. 281, 193 L.Ed.2d 205 (2015). We review for abuse of discretion a district court’s discretionary decisions, such as whether to allow discovery or hold an evidentiary hearing on a vindictiveness allegation. See id. at 879. But for challenges unrelated to these discretionary decisions, “we review the district court’s legal conclusions de novo and its factual findings for clear error.” Id. Because Robinson is not challenging a discretionary decision by the district court, our review would typically be governed by the de -reovo/clear-error standard. But because Robinson failed to raise his vindictiveness assertion prior to his second trial by objecting to either the second or third superseding indictment in a motion to strike the false-statement charge or in a motion to dismiss the entire indictment, we review only for plain error. See United States v. Washburn, 444 F.3d 1007, 1011 (8th Cir.2006) (applying plain-error review when district court granted defendant’s motion to dismiss several counts of second superseding indictment, mistrial was entered on remaining counts, third superseding indictment reinstated dismissed counts, and defendant failed to object to third superseding indictment before retrial).
“Although the government may take action to punish a defendant for committing a crime, punishing a defendant for exercising his valid legal rights is impermissible prosecutorial vindictiveness.” United States v. Campbell, 410 F.3d 456, 461 (8th Cir.2005). The defendant bears the “heavy” burden to show that the prosecution was vindictive, in light of the discretion prosecutors are given in performing their duties. United States v. Leathers, 354 F.3d 955, 961 (8th Cir.2004). A defendant may prove prosecutorial vindictiveness through objective evidence or, in the absence of such evi *1001 dence, “a defendant may, in rare instances, rely upon a presumption of vindictiveness if he provides sufficient evidence to show [that] a reasonable likelihood of vindictiveness exists.” Chappell, 779 F.3d at 879 (citations omitted). Although the presumption “may arise when prosecutors increase the number or severity of charges,” it “does not arise just because action detrimental to the defendant was taken after the exercise of the defendant’s legal rights; the context must also present a reasonable likelihood of .vindictiveness.” Campbell, 410 F.3d at 461, 462. Robinson argues that the government added the false-statement count in the second and third superseding indictments only because he invoked his right to a jury at his first trial and eventually obtained a mistrial on the most serious counts charged in the superseding indictment. He asserts that because the false-statement count was based on the same underlying facts and could have been charged earlier, he has shown a reasonable likelihood of vindictiveness and is entitled to the presumption thereof.
We have noted that there is “no realistic likelihood of vindictiveness ... when a jury is deadlocked and both parties agree that, a declaration of mistrial is a necessity.” United States v. Rodgers, 18 F.3d 1425, 1430 (8th Cir.1994). Nor is there a presumption of vindictiveness “when the government chooses to indict a defendant on individual acts that arose out of the same nucleus of facts which resulted in an earlier acquittal.” Id. (adopting reasoning in United States v. Esposito, 968 F.2d 300, 303-07 (3d Cir.1992)). This is so because, “[w]ithout more, adding new charges based on independent acts, even where the separate acts that prompted the' new charges occurred in the same spree of. activity, does not create a presumption of prosecutorial vindictiveness.” Chappell, 779 F.3d at 881(citations omitted). For example, in United States v. Rodgers, after a jury acquitted the defendants on drug-possession charges and failed to reach a verdict on a conspiracy charge, the government filed-two superseding indictments, recharging the conspiracy and adding firearm, aiding-and-abetting, and multiple distribution charges. 18 F.3d at 1427-28. We rejected the defendants’ claims of vindictiveness, noting that the “additional charges ... were brought by reindictment following a mistrial on the conspiracy charge, and not because the defendants elected to proceed initially by jury trial.” Id. at 1430.
The false-statement count in this case was not added in response to Robinson’s assertion of his right to a jury trial, but only after the jury had deadlocked and a mistrial was declared. The mistrial was no.t declared upon Robinson’s motion and over the government’s objection, nor was it the result of Robinson’s assertion of any legal right. See id. (noting that “[e]ourts will not find prosecutorial vindictiveness when the reindictment was not a reaction to the defendant’s assertion of some right.” (citation omitted)). And although the false-statement count arose from the same general nucleus of facts referenced in the earlier indictment that resulted in a mistrial, the false-statement count was based on Robinson’s separate and independent act of lying to the FBI about those facts. In sum, Robinson has failed to provide sufficient evidence to raise a presumption of vindictiveness, and so the district court did not commit plain error in rejecting Robinson’s claim for relief on that ground.
The judgment is affirmed.

. The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas, now retired.

. The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.