# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2957

_____

United States of America

*Plaintiff - Appellee*

v.

Alexander Castellano-Benitez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: June 15, 2018
Filed: August 2, 2018
(Unpublished)

_____

Before LOKEN, GRUENDER, and ERICKSON, Circuit Judges.

_____

PER CURIAM.

Alexander Castellano-Benitez was convicted by a jury of possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine. He was sentenced to a term of 170 months' imprisonment and five years of supervised release. He now appeals the denial of his motion for a new

trial on the grounds of: 1) an alleged <u>Brady</u> violation, and 2) purported "newly discovered" evidence. We affirm.

## I. Background

The evidence at trial suggested that Castellano-Benitez stole a large quantity of drugs from a dealer in Texas and traveled to Florida in the company of an accomplice, Yunior Florez-Veliz. He then drove with another accomplice, Yulio Cervino-Hernandez, to Nebraska to sell some of the stolen drugs.

On September 22, 2015, Castellano-Benitez and Cervino-Hernandez were in a hotel room in Nebraska when police, acting on a tip, raided the room. When Castellano-Benitez was asked to produce his identification, he lifted a mattress on one of the beds, revealing two small bags and another bag consistent with packaged methamphetamine. Observing this, an officer asked Castellano-Benitez if there was anything under the bed. Castellano-Benitez replied back, "a little bit." During the search, the police discovered a large truck battery and an electronic scale by the bed. Castellano-Benitez's fingerprint was found on the scale. Castellano-Benitez was arrested.

From jail, Castellano-Benitez placed multiple calls to Florez-Veliz (who had remained in Florida) to come to Nebraska to sell drugs. With the assistance of cooperating witnesses and confidential informants, the police located and arrested Florez-Veliz in Nebraska with four pounds of methamphetamine.

While out on bond, Castellano-Benitez placed multiple phone calls to a confidential informant, vaguely referencing something of value that could be found in the truck. Armed with this information, the police reexamined the confiscated truck battery, which had been placed in the lost and found property section in the

Sheriff's Office.  The search revealed that the battery contained nearly five kilograms of methamphetamine.

During pretrial preparations, Castellano-Benitez maintained his innocence and his belief that the cooperating witnesses conspired to frame him.  During discovery, Castellano-Benitez's attorney asked the government whether Florez-Veliz and Cervino-Hernandez were ever detained together.  The government's representations on this issue were, taken as a whole, misleading.  The government first produced a report covering the Saline County Jail's records.  It stated that the two "were never housed together at any time in the Saline County Jail."  In a later email requesting stipulations for trial, an AUSA asked if, "since he had gone through so much work to get the records," defense counsel would stipulate to the fact that Florez-Veliz and Cervino-Hernandez "never crossed paths in their custody."

Contrary to the government's representations, Florez-Veliz and Cervino-Hernandez had been housed together.  A close examination of the Saline County Jail report showed that Florez-Veliz and Cervino-Hernandez spent a period of twenty-one days in a Dawson County, Nebraska, jail.  The report did not provide any further information about the period of confinement in Dawson County.  The email by the AUSA went so far as to represent that the two had never crossed paths while in custody.  In fact, they had been kept in the same large cell at the Dawson facility for more than twenty days.

At trial, Castellano-Benitez pursued the theory that the coconspirators were framing him.  As part of that strategy, he elicited testimony that separated prisoners may be able to communicate.  That testimony discussed challenging or difficult ways of communicating, such as by passing notes.  Oral testimony from the cooperating witnesses during trial downplayed their relationship and conspicuously omitted that they had spent a significant length of time in jail together.  Castellano-Benitez was convicted and sentenced to 170 months in prison.

Castellano-Benitez later discovered that Florez-Veliz and Cervino-Hernandez had spent time in jail together. Upon this discovery, he filed a motion for a new trial under Fed. R. Crim. P. 33, alleging a <u>Brady</u> violation. The district court[1] denied the motion. The court ruled: 1) the evidence was not suppressed because "reasonable diligence" would have led defense counsel to request the Dawson facility's records, and 2) even if the evidence had been suppressed, the evidence was not material in light of the other evidence in the record.

Castellano-Benitez also contended that he should receive a new trial on the basis of "new evidence"—two letters obtained by the defense after trial. A letter from Angel Merida Herrera indicated that Herrera had been housed with Florez-Veliz and Cervino-Hernandez at the Dawson County facility. Herrera reported that he overheard the pair discussing how to make sure an unassuming Castellano-Benitez was convicted. A second letter, purportedly from Cervino-Hernandez, taunted Castellano-Benitez and said he was only in jail because he had made the mistake of lifting up the hotel mattress. The district court ruled that the Herrera letter would not have altered the outcome of the trial, while the Cervino-Hernandez letter was "completely devoid" of relevant information.

## II.    Discussion

We review the denial of a motion for new trial based on a <u>Brady</u> violation for an abuse of discretion. <u>United States v. Reaves</u>, 649 F.3d 862, 867 (8th Cir. 2011) (citing <u>United States v. Deavault</u>, 190 F.3d 926, 929 (8th Cir. 1999)). We likewise review a denial of a motion for a new trial based on new evidence for an abuse of discretion. <u>United States v. Haskell</u>, 468 F.3d 1064, 1076 (8th Cir. 2006) (citing <u>United States v. Parker</u>, 267 F.3d 839, 846 (8th Cir. 2001)). A district court may

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

grant a motion for new trial if the "interest of justice so requires." Fed. R. Crim. P. 33(a). The decision is within the discretion of the trial court, but "[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002).

Brady requires prosecutors to disclose to the defense "all material evidence favorable to the accused, including impeachment and exculpatory evidence." United States v. Robinson, 809 F.3d 991, 996 (8th Cir. 2016). That duty extends to material evidence which prosecutors are themselves unaware of but which is known to others acting on the government's behalf in the case. Id. (citing Kyles v. Whitley, 514 U.S. 419, 432-34 (1995)). To establish a Brady violation, the defendant must show that 1) the prosecution suppressed evidence, 2) the evidence was favorable to the accused, and 3) the evidence was material to the issue of guilt or punishment. United States v. Sturdivant, 513 F.3d 795, 803 (8th Cir. 2008). When determining whether evidence is material, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Robinson, 809 F.3d at 996 (citing Strickler v. Greene, 527 U.S. 263, 289-90 (1999)). The evidence must be viewed in the context of all other evidence put before the jury in the case. See United States v. Wright, 866 F.3d 899, 908-11 (8th Cir. 2017) (discussing other relevant evidence in the impeachment context).

We find that there was no Brady violation because the evidence was not material.[2] We recognize that the evidence may have affected the credibility of two of the cooperating witnesses, but other evidence conclusively and overwhelmingly established Castellano-Benitez's guilt. See United States v. Pendleton, 832 F.3d 934,

---

[2]Because we decide that the evidence was not material, we need not reach the question whether the evidence was actually suppressed.

941 (8th Cir. 2016) (finding no <u>Brady</u> violation where "the testimony of these two witnesses was not essential to proving [a defendant's] guilt because the other evidence of his guilt was overwhelming"). For example, the physical evidence obtained in the motel room and the contents of Castellano-Benitez's monitored phone calls related to the truck battery are independent pieces of evidence sufficient to establish guilt, such that we can be sure the trial resulted "in a verdict worthy of confidence." The district court did not abuse its discretion by concluding that <u>Brady</u> did not compel a new trial.[3]

Similarly, the new evidence did not warrant a new trial. To obtain a new trial on the basis of newly discovered evidence, a defendant must show: 1) the evidence was unknown or unavailable to the defendant at the time of trial, 2) the defendant was duly diligent in attempting to uncover the evidence, 3) the newly discovered evidence is material, and 4) the newly discovered evidence is such that it will probably result in an acquittal upon retrial. <u>Haskell</u>, 468 F.3d at 1076 (quoting <u>Parker</u>, 267 F.3d at 846). For essentially the same reasons as noted above, a retrial would be unlikely to result in an acquittal even if the two letters were considered. Both letters relate to the mindset of one or both coconspirators in offering testimony. The other evidence of Castellano-Benitez's guilt is conclusive even absent that testimony. Any implication contained in the letters that Castellano-Benitez was unaware of the methamphetamine is contradicted by his own actions and statements during and following the raid. The district court properly exercised its discretion in denying a new trial.

---

[3]We do not mean to minimize the AUSA's conduct in this matter. The representations made were in error, asserted with such confidence so as to be misleading, and created the potential for a serious problem. Nonetheless, the overwhelming evidence of Castellano-Benitez's guilt leaves us free from doubt that the verdict is worthy of confidence.

**III.    Conclusion**

We affirm.

_____